## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR  2 2006

GREGORY C. LANGHAM
CLERK

Civil Action No. 03-CV-1969-CAB-(OES)

KUNAL PADHIAR,

Plaintiff,

v.

STATE FARM AUTOMOBILE INSURANCE COMPANY, an Illinois corporation,

Defendant.

---

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter comes before the Court on the Plaintiff's Motion for Partial Summary Judgment and on the Defendant's Motion for Summary Judgment. This Court, having considered the motions, having reviewed the briefs and materials on file, and being fully advised in the premises, **FINDS** and **ORDERS** as follows:

### FACTUAL BACKGROUND

This lawsuit arises from a single car accident that occurred on February 1, 2003. At the time of the accident, the Plaintiff, Kunal Padihar, was driving the 1993 Infinity his parents insured through State Farm Mutual Automobile Insurance Company (State Farm), the Defendant. As a result of the accident, the Plaintiff suffered serious personal injuries. After the accident, and due to his extensive injuries, the Plaintiff received the maximum

personal injury protection (PIP) benefits allowed under the terms of the insurance policy. In this lawsuit he seeks the reformation of the policy to incorporate benefits in excess of the policy's coverage and asserts claims for breach of contract and bad faith based upon State Farm's refusal to provide PIP benefits in excess of the policy's coverage.

In November of 1993, the Plaintiff's father, Prabhat Padhiar, applied for insurance covering the vehicle involved in the accident. The application form contained a section for the selection of one of several types of PIP coverages. Mr. Padhiar selected P1 PIP coverage.[1] Based upon the application provided by Mr. Padhiar, State Farm issued an insurance policy covering the vehicle. The policy was amended by endorsements in October of 1998, but at all times it included P1 PIP coverage. It is undisputed that Mr. and Mrs. Padhiar received the policy forms.

The forms sent to the Padhiars contain a PIP Schedule that identified all available PIP coverages and provided a side-by-side comparison of the benefits afforded under each coverage, including the P1 coverage selected by Mr. Padhiar. In addition, in October of 1994, and in March of 1995, State Farm sent summary disclosure forms with their automobile insurance renewal notices. Those summary disclosure forms described all major coverages, including PIP coverages. With respect to the PIP benefits, the summary disclosure forms provided, "Optional personal injury protection coverages are also available."

---

[1]     The P1 PIP coverage contained in the policy includes all required minimum PIP benefits required under Colorado law. See C.R.S. § 10-4-706.

This language was offered and approved by the Colorado Division of Insurance.

In April of 1998, State Farm sent the Padhiars an Auto Renewal Notice which specifically made enhanced PIP benefits available to them and offered specific premium prices for the purchase of higher PIP coverages. The Auto Renewal Notice referred the Padhiars to an enclosed News & Notes newsletter for more information. The News & Notes newsletter contained an article entitled "Higher PIP Coverage Limits Are Available." That article described the purposes and specific benefits afforded under each type of enhanced PIP coverage available. The Padhiars repeatedly renewed their policy by making payments reflected in the renewal notices sent to them, based upon their previously selected P1 PIP coverage.

In March of 1999, State Farm sent the Padhiars a policyholder notice entitled "Important Notice About No-Fault Coverage Claims." That notice stated that certain no-fault coverages would change when endorsement 6850AJ took effect. A copy of the endorsement was enclosed. The endorsement contained an amended PIP Schedule, which advised of the elimination of the P6, P9 and P10 PIP coverages and the extension of time for recovery of rehabilitation expenses from five to ten years for the P1 PIP coverage. That notice also directed policyholders to contact their agent if they had any questions about the coverage changes. In addition, State Farm sent a separate policyholder notice entitled "Important Notice Regarding Changes to Your Policy" in September of 2000. That notice also provided the Padhiars an opportunity to purchase enhanced PIP coverages.

The Plaintiff, the Padhiars's son, was involved in an accident in February of 2001. After exhausting the P1 PIP benefits available under the policy, he sought additional PIP benefits. State Farm denied his claim. This lawsuit ensued.

## STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact to be resolved at trial. Fed. R. Civ. P. 56(c); Nebraska v. Wyoming, 507 U.S. 584, 590 (1993). Thus, a district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Nelson v. Geringer, 295 F.3d 1082, 1086 (10th Cir. 2002). "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment." Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir. 1997) (citations omitted).

In applying these standards, the district court will view the evidence in the light most favorable to the party opposing summary judgment. Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). The movant bears the initial burden of demonstrating the absence of evidence to support the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party carries this initial burden, the non-moving party must then establish a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887,

891 (10th Cir. 1991). To carry this burden, the non-moving party must go beyond the pleadings and designate specific facts to show there is a genuine issue for trial. Ford v. West, 222 F.3d 767, 774 (10th Cir. 2000). The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient to create a "genuine" issue of disputed fact. Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).

## ANALYSIS

The parties' cross motions for summary judgment now pending before this Court concern only the question of whether the Plaintiff is entitled to reformation of the insurance policy to include enhanced PIP coverage. The Plaintiff's claim for reformation of the policy is based upon the allegation that State Farm failed to comply with the Colorado Automobile Accident Reparations Act.[2] His remaining claims are based upon the reformed contract. Therefore, if the Court determines that reformation is not available, the Plaintiff's complaint must be dismissed. If, however, the Court determines that reformation is available, the Plaintiff's remaining claims will remain.

## I. The Colorado Automobile Accident Reparations Act

The Colorado Automobile Reparations Act, sometimes referred to as Colorado's No-Fault Act (the Act), required that automobile insurance contracts provide mandatory minimum PIP benefits and other basic coverages. Specifically, section 10-4-706(1) of the

---

[2]

The Colorado Automobile Accident Reparations Act, C.R.S. §§ 10-4-701 through 10-4-726, was repealed in 2003. All citations to the act in this order refer to the 2002 version of the Colorado Revised Statutes.

Act mandated that insurance contracts must provide:

> (b)(I) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical . . . and nonmedical remedial care and treatment . . . performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle . . . .
> (c)(I) Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle.

Section 10-4-706 goes on to require that insurance companies

> providing coverages as set forth in this section shall provide written explanations of all available coverages prior to issuing any policy to an insured. After a named insured selects a policy with desired personal injury protection coverage, an insurer shall not be under any further obligation to notify such policyholder in any renewal or replacement policy of the availability of basic personal injury protection policy or of any alternative personal injury protection coverage.

C.R.S. § 10-4-706(4)(a) (emphasis added).

The Act also required insurance companies to offer their policyholders the option to purchase enhanced PIP benefits. The Act stated:

> Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-806, at the option of the named insured:
> (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitation; or
> (II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar amount or time limitations

6

and payment of benefits equivalent to eighty-five percent of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

C.R.S. § 10-4-710 (emphasis added).

## II.     State Farm's compliance with the Colorado Automobile Accident Reparations Act

The Plaintiff has argued that State Farm violated the Colorado Automobile Accident Reparations Act and, as a result, he is entitled to reformation of the policy to include enhanced PIP coverage. Generally speaking, reformation of an insurance contract "usually occurs to make the policy express the true intent of the parties." Clark v. State Farm Mutual Automobile Insurance Co., 319 F.3d 1234, 1241 (10th Cir. 2003). However, when an insurance policy violates a statute, reformation may be required to ensure that coverage meets the statutory requirements, regardless of the parties' intent. Id.; Thompson v. Budget Rent-A-Car Systems, Inc., 940 P.2d 987, 990 (Colo. App. 1996).

In support of his claim for reformation, the Plaintiff contends that State Farm failed to comply with the Act in the following ways: (1) State Farm did not provide written notice of enhanced PIP coverages; (2) State Farm's summary disclosure violated the Act; and (3) State Farm did not make any legally sufficient offers for enhanced PIP coverage. In addition, he argues that State Farm is collaterally estopped from contesting the Plaintiff's assertion that it did not make an offer.

### a.     The Written Notice Requirement

The Plaintiff has argued that the Act requires notice of enhanced PIP coverages to be provided to the policyholder in writing. He contends that section 10-4-706(4)(a) mandates written explanations of available PIP coverages.

As explained above, section 10-4-706(4)(a) provides, in pertinent part, that insurance companies issuing policies "providing coverages as set forth in this section shall provide written explanations of all available coverages" before issuing any policies. C.R.S. § 10-4-706(4)(a) (emphasis added). The question arises, however, as to what coverages are "set forth in this section." The only coverages detailed in section 10-4-706 are the minimum PIP coverages. It does not address enhanced PIP coverages. By its own terms, section 10-4-706 limits the written explanation requirement to minimum PIP coverages, not coverages set forth in different sections of the Act. See Stickley v. State Farm Mutual Automobile Insurance Co., Civil Action No. 04-CV-01685-EWN-OES at 10-12 (D. Colo. November 18, 2005) (not submitted for publication) (concluding that the writing requirement of C.R.S. § 10-4-706(4) does not govern enhanced PIP coverages). Therefore, even if State Farm provided no written notice of enhanced PIP coverage, it would not have violated the written explanation provision of the Act.

Notwithstanding the fact that the section 10-4-706 requirement does not apply to notice of enhanced PIP coverages, this Court finds that State Farm did provide written notice of enhanced PIP coverages that were available to the Padhiars. Thus, even if the Act required written notice of the enhanced PIP coverages available, State Farm complied. On

a number of occasions State Farm provided the Padhiars notices of PIP coverages available to them for the vehicle involved in the accident underlying this case and for other vehicles that they owned.  The written materials State Farm sent to the Padhiars made enhanced PIP coverages available to them, explained the purposes of those coverages, identified specific benefits and limitations under each level of coverage, and provided specific premium prices for each level of coverage.

Those materials included the following:

1. A November 3, 1993, insurance application was completed by Mr. Padhiar for the insurance policy at issue.  That application contained a section listing each available PIP coverage and permitting the applicant to select one PIP coverage. Exh. A to State Farm's Mot. for Summary Judgment.  On the application, Mr. Padhiar specifically selected P1 PIP coverage. Id.

2. The policy provided to Mr. Padhiar contained a PIP schedule which identified the benefits and limitations afforded by each level of PIP coverage.  Exh. E to State Farm's Mot. for Summary Judgment.

3. Two similar summary disclosure forms were sent by State Farm to the Padhiars.  Those forms explained the basic PIP coverages and, with respect to enhanced PIP coverages, explained that "optional personal injury protection

coverages are also available."[3] Id.

4.   In March of 1999, State Farm sent the Padhiars a policyholder notice entitled "Important Notice About No-Fault Coverage Changes" and a copy of an endorsement numbered 6850AJ. (Exh. K, State Farm's Mot. for Summ. J.) That endorsement contained an amended PIP schedule and expressly notified the Padhiars that, unless P4 or P8 PIP coverages were purchased, PIP medical benefits would be limited to a term of 5 years. It also eliminated the pedestrian limitation from the policy. That endorsement became part of the Padhiars's policy as of May 3, 1999. (Exh. K, State Farm's Mot. for Summ. J.)

5.   The 1998 Auto Renewal Notice sent by State Farm to the Padhiars more than two and a half years before the accident made enhanced PIP coverages available to them at higher premium prices that were delineated in the notice. (Exh. L, State Farm's Mot. for Summ. J.)

6.   Along with the Auto Renewal Notice, State Farm enclosed its newsletter entitled "News and Notes" which contained a lengthy article explaining the purposes of PIP coverages and the benefits afforded under the enhanced PIP coverages that were available.(Exh. N, State Farm's Mot. for Summ. J.)  This newsletter directed policyholders, including the Padhiars, to contact their State

---

[3]   This language was offered and approved by the Colorado Division of Insurance. See State Farm's Mot. for Summ. J., exh. J .

Farm agent if they had questions about the PIP coverages described or if they wanted to make changes to their existing coverage. (Exh. N, State Farm's Mot. for Summ. J.)

7.    The Padhiars also received similar Auto Renewal Notices and News and Notes Newsletters when State Farm sent those documents to them in connection with their Honda and its insurance coverage. ( State Farm's Mot. for Summ. J., exh. M, O)

8.    In March of 2000, State Farm sent the Padhiars a notice entitled "Important Notice Regarding Your No-Fault Coverage" with a copy of endorsement 6906. (Exh. P, State Farm's Mot. for Summ. J.)    The Padhiars also received an identical communciation with respect to their Honda coverage. (Exh. Q, State Farm's Mot. for Summ. J.)    That document notified the Padhiars about changes to their PIP coverage and gave them another opportunity to purchase enhanced PIP coverages that were not subject to the same limitations as their P1 coverage.

9.    Finally, in September of 2000, State Farm sent another notice entitled "Important Notice Regarding Changes to Your Policy," along with an amended version of the endorsement 6906. (Exh. R, State Farm's Mot. for Summ. J.) Again, those documents discussed changes to the PIP coverage and gave the Padhiars another opportunity to purchase enhanced PIP coverages.

Given all of these documents, the Court concludes, as a matter of law, that State Farm did provide written notice of enhanced PIP coverages that were available to the Padhiars and, therefore, complied with the written notification requirement contained in C.R.S. § 10-4-706(4), even if it were interpreted to govern notice regarding extended PIP coverages.

### b.       The Offer Requirement

The Plaintiff also takes the position that State Farm failed to comply with the Act because it did not provide the Padhiars with a legally sufficient offer for enhanced PIP coverage. Essentially, the Plaintiff's argument is that the documents sent by State Farm to the Padhiars (described in the preceding section) were merely informational documents and did not constitute legal offers, as a matter of law.

Section 10-4-710 of the Act requires every insurer to "offer . . . enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706." C.R.S. § 10-4-710(2)(a). Unlike section 10-4-706(4), section 10-4-702(2)(a) does not require the insurer to provide written explanations of available enhanced coverages. See Stickley, Civil Action No. 04-CV-01685-EWN-OES, Order and Memorandum of Decision, November 18, 2005, at 12 (not submitted for publication). Rather, an insurance company's obligation under § 10-4-710(2)(a), is satisfied if enhanced PIP benefits are "made available" to the policyholder. Brennan v. Farmers Alliance Mut. Ins. Co., 961 P.2d 550, 554 (Colo. App. 1998). The Brennan court explained this directive: "All that is required is that the insurer offer these extended benefits." Id. The court went on to state, "[t]hus, although an

insurer must offer extended coverages listed in § 10-4-710 which apply to all categories of persons specified in § 10-4-707, nothing in [the Act] prohibits the named insured from limiting its purchase of additional coverage by scope, application, or amount." Id.

In this case, it is undisputed that when Mr. Padhiar first purchased automobile insurance from State Farm, through his agent, Bill Smith, he had some discussions with Smith about the coverages he was applying for and the different premium prices for the different coverages. (Padhiar depo. at 17:23-19:10; 33:7-35:25) After Smith passed away, Gary Wilcox became the Padhiars's insurance agent. In his interactions with both Smith and Wilcox, Mr. Padhiar was aware that he could obtain greater coverage upon payment of higher premium dollars. (Id. 35:9-36:5) Mr. Wilcox testified that it was his custom to orally explain PIP coverages to prospective policyholders and to offer them an opportunity to purchase the optional enhanced PIP coverages. Wilcox Depo. 33:11-34:3. While the record is unclear as to whether Wilcox ever had such a discussion with Mr. Padhiar, it is replete with written communications from State Farm to the Padhiars concerning their ability to purchase enhanced PIP coverage. See supra, Part II.a., pp. 9-11.

The interpretation of these documents and resolution of the question of whether they constituted "offers" of enhanced PIP coverage under C.R.S. § 10-4-710(2)(a) are questions of law which can be resolved by this Court. See Collins v. Colorado Mountain College, 56 P.3d 1132, 1135 (Colo. App. 2002). Other courts that have considered the question have concluded that, as a matter of law, State Farm's Auto Renewal Notices and the enclosed

newsletter describing P4 and P8 coverages, identical to the documents provided to Mr.

Padhiar in this case, were sufficient to satisfy the requirements of C.R.S. § 10-4-710.

Calderon v. State Farm Mutual Automobile Insurance Co., Civ. Act. No. 04-CV-0276-REB-

OES (D. Colo. September 25, 2005) (not submitted for publication) (holding that State

Farm's Auto Renewal Notices and News & Notes newsletters were compliant offers of

enhanced PIP benefits); Stickley, at 14-15 (holding that State Farm's Auto Renewal Notices

and News & Notes newsletters were compliant offers of enhanced PIP benefits).

In this case, the Padhiars were provided with Auto Renewal Notices and

accompanying News & Notes newsletters in 1998. The renewal notice states:

> **HIGHER PERSONAL INJURY PROTECTION COVERAGE LIMITS ARE AVAILABLE**
> You can purchase higher Personal Injury Protection coverage limits with no deductible.
> > **Coverage P4 semi-annual premium = $146.40**
> > **Coverage P8 semi-annual premium = $142.08**
> See the enclosed News and Notes article for an explanation of these coverages.

This language expressly offers the Padhiars coverage at the stated prices. And, the enclosed

News & Notes newsletter explained the P4 and P8 coverages in detail and how those

coverages differed from P1 coverage.

Based upon the rationale of the Calderon and Stickley cases, those documents alone

would probably satisfy C.R.S. § 10-4-710. However, the Padhiars received many other

notices regarding their ability to purchase enhanced PIP coverages. See supra, Part II.a., pp.

9-11. Most notable of those documents is the March 2000 notice entitled "Important Notice

Regarding Your No-Fault Coverage," which enclosed a copy of endorsement 6906, and the subsequent September 2000 notice entitled "Important Notice regarding Changes to Your Policy," which enclosed a copy of the amended endorsement 6906. The Padhiars received two copies of these documents, one for their Infinity, the automobile involved in the accident in this case, and one for their Honda. Each of these documents notified the Padhiars about changes to their PIP coverage and offered them the opportunity to purchase enhanced PIP coverage which was not subject to the same limitations as their existing P1 coverage.

State Farm's written communications regarding the Padhiars's automobile insurance provided them numerous opportunities to purchase enhanced PIP coverage. Therefore, even construing those documents in the light most favorable to the Padhiars, this Court finds that no reasonable jury could conclude that the Padhiars were not offered enhanced PIP coverage by State Farm.

### c. Availability of Complaint Coverage

The Plaintiff has also argued that, even if the 1998 Renewal Notice and News & Notes newsletter constituted a legally sufficient offer, it could not have been compliant with the Act because, in 1998, no compliant coverage was available to sell. Essentially, the Plaintiff's position is that because State Farm had not removed the pedestrian exclusion from its form policies by the time it sent the Renewal Notice in 1998, the offer of enhanced PIP coverage was defective. Therefore, the policy ought to be reformed to include enhanced PIP coverages for the Plaintiff.

15

In the case of <u>Brennan v. Farmers Alliance Mutual Insurance Co.</u>, 961 P.2d 550 (Colo. App. 1998), the plaintiff, a pedestrian, was injured when an automobile insured by Farmers Alliance Mutual Insurance Company (Farmers) struck him as he was crossing the street. <u>Id</u>. at 552. The policy at issue provided enhanced PIP benefits, as required by the Act, but those enhanced PIP benefits did not cover pedestrians under the terms of the policy. As a result, Farmers refused to provide additional enhanced coverage to the plaintiff. The plaintiff sued Farmers, claiming that the exclusion of pedestrians from the enhanced PIP coverage violated the Act. <u>Id</u>. at 552-53.

The Colorado Court of Appeals agreed, holding that the term "injured person" in § 10-4-710(2), the portion of the Act requiring insurers to offer enhanced PIP coverage, encompassed "any injured person otherwise covered as set forth in § 10-4-707(1)." <u>Id</u>. at 553. Section 10-4-707(1) established the groups of people entitled to mandatory PIP coverages set forth in § 10-4-706(1). One of the groups identified was "pedestrians who are injured by the covered vehicle." <u>Id</u>.; C.R.S. § 10-4-707(1). As a result, the <u>Brennan</u> court reformed the policy at issue to include enhanced PIP coverage for pedestrians. The court stated:

> Here . . . it is undisputed that Farmers did not offer extended coverage which included pedestrians. And when, as here, an insurer fails to offer the insured optional coverage that satisfies the [Act], additional coverage in conformity with the offer mandated by statute will be incorporated into the policy.

<u>Brennan</u>, 961 P.2d at 554.

The Tenth Circuit Court of Appeals addressed the identical issue in the case of <u>Clark v. State Farm Mutual Automobile Insurance Co.</u>, 319 F.3d 1234 (10th Cir. 2003).  There, State Farm had offered enhanced PIP benefits to the policyholder, but failed to offer enhanced PIP coverage for pedestrians.  <u>Id</u>. at 1236.  The court concluded that, because the Act required an offer of enhanced PIP coverage for pedestrians, the policy must be reformed to include that coverage.  <u>Id</u>. at 1241.[4]

In this case it is undisputed that, in 1998, at the time the 1998 Renewal Notice and News & Notes newsletter were sent to the Padhiars, State Farm did not offer enhanced PIP coverage for pedestrians.  That fact, however, is irrelevant here because, unlike the plaintiffs in <u>Brennan</u> and <u>Clark</u>,  the Plaintiff was not a pedestrian when he was injured -- he was the driver of the insured automobile.  Therefore, even if the Court were to reform the policy to include enhanced PIP coverage for pedestrians (the remedy provided in <u>Brennan</u> and <u>Clark</u>), that coverage would not cover the Plaintiff's injuries.

Further, State Farm did offer enhanced PIP coverage that covered pedestrians by

---

[4]

The Plaintiff has argued that State Farm is precluded from arguing that it made a compliant offer by the <u>Clark</u> case, where State Farm was the defendant.  <u>See Antelope Co. v. Mobil Rocky Mountain, Inc.</u>, 51 P.3d 995, 1003 (Colo. App. 2001).  This Court, however, is not persuaded that the issues in this case are identical.  In <u>Clark</u>, the question was whether State Farm's policy ought to be reformed to provide enhanced coverage for an injured pedestrian, coverage that was never offered to the policyholders.  <u>Clark</u>, 319 F.3d at 1241.  Here, the question is whether the policy ought to be reformed to provide enhanced PIP coverage that State Farm had already offered to the Padhiars simply because it did not have enhanced PIP coverage for pedestrians available at the time it made one of the enhanced coverage offers.

March of 1999. The Padhiars received notice of the availability of that enhanced coverage on at least three occasions prior to the February 1, 2001, accident underlying the Plaintiff's claims: (1) the March 1999 notice entitled "Important Notice About No-Fault Coverage Changes" (Exh. K, State Farm's Mot. for Summ. J.); (2) the March 2000 notice entitled "Important Notice Regarding Your No-Fault Coverage" (Exh. P, State Farm's Mot. for Summ. J.); and (3) the September 2000 notice entitled "Important Notice Regarding Changes to Your Policy" (Exh. R, State Farm's Mot. for Summ. J.)   Thus, as a matter of law, State Farm did offer coverage that complied with the Act, including the requirement that enhanced PIP coverage be offered for pedestrians, by March of 1999 at the latest.

In short, because reformation with regard to the pedestrian exclusion would be irrelevant here, and because State Farm offered enhanced PIP coverage to the Padhiars on a number of occasions, reformation of the policy would be inappropriate here.

## III.   The Remaining Claims

Because the Court has rejected the Plaintiff's claim for reformation of the insurance policy, the remaining claims must be dismissed.  Here, State Farm had no contractual duty to pay enhanced PIP benefits.  Further, it is undisputed that State Farm did pay the P1 PIP benefits provided by the policy.  The Plaintiff, therefore, cannot establish that State Farm failed to honor any contractual duty or obligation. See Western Distributing Co. v. Diodosio, 841 P.2d 1053 (Colo. 1992).  Therefore, his breach of contract claim fails as a matter of law.  Further, because State Farm had no legal duty to provide enhanced PIP benefits to the

Plaintiff, the Plaintiff has failed to sufficiently allege a claim for bad faith, as a matter of law.

See Dale v. Guarantee National Insurance Co., 948 P.2d 545 (Colo. 1997).

THEREFORE, Plaintiff's Motion for Summary Judgment is hereby DENIED; Defendant's

Motion for Summary Judgment is hereby GRANTED.

Dated this _27th_ day of February, 2006.

 

 

_____
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION